Day, J.
The controversy in the case arises upon demurrer to the original petition. The question is, whether the plaintiff below is entitled to recover, of the administrator ■of her deceased husband, the rents received by him for the mansion-house of her deceased husband, accruing during the year after his death previous to the assignment of her ■dower, and appropriated by him to the payment of the ■debts of the decedent? Two leading propositions are involved in the consideration of this question: 1. "Was the widow entitled to the rents in question ? • 2. If so, can she recover of the administrator, in his representative capacity, the rents so received and appropriated by him ?
1. The widow’s dower was assigned within the year after the death of her husband. She claims the right to the use of his dwelling-house from the time of his death until the assignment of her dower. The first section of the “ Act relating to dower ” (S. & C. 516), provides that the widow •“ shall remain in the mansion-house of her husband, free of ■charge, for one year after his death, if her dower be not sooner assigned to her.”
Does the petition show a case entitling her to the benefit of this provision ? Some of the averments in the petition are not entirely clear, but no motion having been interposed to make them more definite and certain, wo must interpret the petition according to its true import and moaning.
It is averred that the decedent, at the time of his death, owned and occupied the mansion in question. This averment must be kept in mind in connection with the further averment that the house was also then occupied by another person. The two statements are not necessarily inconsistent, nor does the latter invalidate the former. The more essential inquiry is, whether the occupancy of the tenant under the decedent interfered with the right of the widow to the exclusive occupancy of the mansion-house, after the death of her husband ?
*138 Prom the fact that the rent of the tenant was to be paid partly by the occupancy of the decedent, it is fairly infer-able that the renting to him was, at most, during the life of the decedent only; and this conclusion becomes incontrovertible, as the case now stands before us, from the fact that after the death of the husband, the tenant continued in the mansion, so far as appears, only under an arrangement made by him with the administrator. Moreover, his occupancy terminated-shortly after the death of the husband, and within the period in controversy. There was then no legal obstacle to the widow’s enjoyment of the mansion-house of her husband as provided by the statute.
But it would seem that the administrator of the decedent assumed to control the mansion of his intestate, and denied to the widow the possession of the premises. He can not, however, defeat a recovery against him by the widow, on the ground that she demanded neither the possession of the mansion-house, nor the rents thereof, for the demand of both was expressly waived by him, if she was entitled to-either. Upon this consideration, she abandoned any further attempt to obtain possession of the house, and consented that he might continue to control it, subject to the future determination of her rights. The widow can not,, therefore, be regarded as having abandoned the premises; but, as against the administrator, must be regarded as having been refused both the possession and the rents of the mansion-house of her deceased husband.
But aside from these considerations, what are the rights of the widow under the statute ? The provision is for the benefit of the widow for a limited period, between the time of the death of her husband and the assignment of her dower, and it would be an unreasonable limitation' to restrict it to a right of personal continuance in the mansion-house merely, and deny to her such reasonable enjoyment of the possession of the premises, as she may deem promotive of her comfort.
This view is in accordance with the weight of authority in other states, in the construction of statutes worded nearly *139 the same as our own, differing only in the period of time the widow is permitted to remain in the mansion-house. McReynolds v. Counts, 9 Gratt. 242; Inge v. Murphy, 14 Ala. 289; Oakley v. Oakley, 30 Ala. 131; Shelton v. Carrol, 16 Ala. 148; Stokes v. McAllister, 2 Mo. 163; White v. Clark, 7 Mon. 640; Hyzer v. Stoker, 3 B. Mon. 117; Burk v. Osburn, 9 B. Mon. 579; 2 Scribner on Dower, 59.
In Inge v. Murphy, supra, the court say: “ Having the-right of possession by statute, she is entitled to recover the rents and profits, and may hold the premises free from molestation or rent. Nor could it have been the object of the-statute to coerce her to remain in person on the premises ; or, rather, to make her title depend on that condition : for it may be that she could only derive her support from the premises by renting them; and to hold that the mere removing from the premises defeats this right, might iu many instances defeat the very intention of the statute, which is a provision for the widow until her dower is set apart for-her. . . . Mrs. Inge permitted the trustees to enter without objection and rent out the premises, and under their advice moved from them, but no dower was assigned to her, and she has neither released her right to the trustees, nor agreed to do so, so far as we are informed by the record. She is, therefore, entitled to the rents received by the trustees previous to the allotment of dower to her.”
We 'conclude, then, that the plaintiff below, upon the case made in the petition, is entitled to recover the rents in question.
2. The remaining question is, whether she can recover of the administrator in his representative capacity.
This question is not free from difficulty, for it is an undoubted general principle that an administrator can not bind the estate by an executory contract, and thus create-a liability not founded upon a contract or obligation of the intestate.
It is to be borne in mind that in this state the question is not embarrassed by distinctions arising between actions at law and suits in chancery, for whatever rights a party *140 may have are enforcible by the “civil action” of the ■code.
The administrator rented the premises and collected the ' rent, not as the agent of the widow, but, doubtless, upon the supposition that it was his duty as administrator so to ■ do, for he paid the amount collected on the debts due from the estate. It is quite apparent from the petition that whatever was done in relation to the mansion-house by the administrator was understood to be done in the discharge of his official duty. All parties seemed to have acted in good faith under this misapprehension of his powers. The administrator, therefore, regarded the rents as assets of the ■estate, and used, them accordingly. Though not strictly assets, they practically became such by the voluntary act of the administrator. No injustice, therefore, can be done •either to him or to the estate by regarding the rents which thus went into the estate as assets. On the contrary, to hold otherwise, and leave the widow solely to such remedy .as she may have against the administrator personally might do great injustice to her, for it is averred that the estate is fully solvent, and the administrator may be personally insolvent. Since, then, both the estate and the administrator in his representative capacity have had the benefit of the rents as assets, the administrator ought to be precluded from defeating a recovery against him as administrator, on the ground that he is only liable personally. Howard’s Adm’r v. Powers, 6 Ohio, 95; Arbuckle v. Tracey, 15 Ib. 432. In Crowder v. Shackleford, 35 Miss. 359, it was held that, after the administrator has received rents and paid them in discharge of the debts of the intestate, he will be precluded from alleging that he received them without authority, and must be chargeable as for assets rightfully received. To the same effect are Terry v. Furguson’s Adm’r, 8 Porter (Ala.) 500, and Satterwhite v. Littlefield, 13 S. & M. 302.
In the light of these cases we are constrained to extend to this case, where the rents went into the estate as assets, the principles settled by the Supreme Court of the United *141 States in De Valengin’s Adm’r v. Duffy, 14 Pet. 290, 291, where it is said: “ There are, doubtless, decisions which countenance the doctrine that no action will lie against an executor or administrator in his representative character, except upon some claim or demand which existed against the testator or intestate in his lifetime; and that if the-claim or demand wholly accrued in the time of the executor or administrator, he is liable therefor only in his personal character. But upon a full consideration of the nature and of the various decisions on this subject, we are of opinion that whatever property or money is lawfully recovered or received by the executor or administrator after the death of his testator or intestate in virtue of his representative character, he holds as assets of the estate; and he is liable therefor in his representative character to the-party who has a good title thereto. In our judgment this, upon principle, must be the true doctrine.” And further on the court add: “ We do not mean to say that theprineipal may not in such eases resort to the administrator-in his personal character, and charge him, de bonis propriis, with the amount thus received. We think he may take either course, at his election; but that whenever an executor or administrator, in his representative character, lawfully received money or property, he may be compelled to-respond to the party entitled in that character, and shall not be permitted to throw it off after he has received the money in order to defeat the plaintiff’s action.”
Authorities are not wanting to support the broader-equitable right of the widow to recover of the administrator, in his representative character, whether he be regarded as having received the rents as her agent or in his-official capacity, for, in either case, when the rents were applied in discharge of the debts of the estate, it was, in effect, a payment of her money, or by her, to the use of the-administrator, as such; and, on that ground, it is well settled she might maintain an action against him, in his representative character, for money paid to his use as administrator. Howard’s Adm’r v. Powers, 6 Ohio, 92; Col *142 lins, Adm’r v. Weiser, 12 S. & R. 97; Ashby v. Ashby’s Ex’rs, 7 Barn. & Cress. 444; 2 Will. on Ex’rs, *1509; Corner v. Shew, Ex., 3 Mees. & Wels. 350; Steel v. McDowell, 9 S. & M. 193; Johnson v. Johnson’s Adm’r, Wright’s Rep. 590.
In Peter v. Beverly, 10 Peters, 566, it was held, that if an •executor pays a debt of the estate out of his own funds, he becomes a creditor of the estate, and may resort to the trust fund to satisfy his debt. A third party, who, through the executor, pays a debt of the estate, is surely equally the creditor of the estate. Accordingly it was said by the Court, in Steel v. McDowell, supra, that “ it is but just that the person making the payment should have the right to look to the fund which the executor holds, and to recover it uuder a count for money paid to the use of defendant, as •executorand in Wall v. Kellogg’s Ex’r, 16 N. Y. 385, it is said : “ The estate having received the benefit of the purchase-money paid by Beach, it is equitably chargeable with the 'sum paid by the plaintiff to protect his interest in the premises.” See also, to the same effect, Arbuckle v. Tracy, supra. So Mr. Williams, in his work on Executors •(vol. 2, 1509), adopts the language of an English judge, in Ashby v. Ashby, supra, as follows : “ Again, a plaintiff may, in many cases, have an advantage in proceeding against the •assets rather than against the executor personally; the executor, in his individual capacity, may be insolvent; in his character of executor, he may have assets adequate to answer any claim; and when the money is paid to his use, as executor, justice seems to require that the person who has made the payment should have the liberty of looking to the fund which the executor has in that character.”
We concur in regarding this as a just rule, and therefore hold, that, upon both reason and authority, the plaintiff below might maintain an action against the administrator, in his representative capacity, to recover the rents due to •her, which were appropriated by him to the benefit of the •estate.
For the reasons already stated, the conclusions at which we have arrived upon the whole case are as follows:
*143 1. The right of a widow to remain in the mansion-house of her deceased husband, as provided by statute, is not restricted to a personal continuance in the house merely, but she is entitled to a reasonable enjoyment of the possession of the premises, and may, therefore, either personally occupy them, or she may rent them, as she may deem best promotive of her comfort.
2. If the administrator of her husband’s estate assumes to control the mansion-house of the decedent, and, denying the widow’s right to the possession thereof, rents it to another person, the widow is entitled to the rents received by him during the period she is entitled to remain in the premises.
3. If the administrator has collected the rents to which the widow is entitled, and has appropriated them to the payment of debts due from his intestate, she may elect to charge him in either his personal or representative character, and he can not defeat a recovery by her in an action against him, in his representative capacity, on the ground that he is personally liable therefor.
4. An administrator, who, without authority, collects rents of his intestate’s real estate, and uses them as assets in paying the debts of the estate, is liable therefor to the party entitled to the rents, and an action for their recovery •may be maintained against him, in his representative character.
It results, so far as any question is made upon the record, that there was no error in the ruling of the district court; the judgment must therefore be affirmed.
Ashburn, J., dissented.