DONALDSON, Judge.
Fred Poulin appeals from a final judgment of the Jefferson Circuit Court assessing damages against him in favor of Howard J. Norwood, Jr. (“Norwood”), in the amount of $2,040 for unlawful possession of real property and ruling against him on his counterclaim for damages against Nor-wood. We affirm the judgment in favor of Norwood on Poulin’s counterclaim, reverse the judgment in favor of Norwood on his claim against Poulin, and remand the cause with instructions.

Facts and Procedural History

The parties stipulated to the facts of the case; the following facts are pertinent. Brenda J. Snider, Poulin’s wife, died on or about May 11, 2010. Her will was admitted to probate. In the will, she named her son Dudley Hunley as the personal representative of her estate and as the beneficiary of most of her assets. At the time of her death, Snider owned certain real property (“the property”) located in Birmingham. The property was titled in her name alone. Before Snider’s death, Snider and Poulin had resided on the property together. Although Poulin was not a record title holder of the property, it is undisputed *820 that he had a right to remata in possession of the property as Snider’s surviving spouse, pursuant to § 43-8-114, Ala.Code 1975:
“The spouse may retain possession of the dwelling house where the surviving spouse resided with the decedent, with the offices and buildings appurtenant thereto and the plantation connected therewith until homestead is assigned, free from the payment of rent. The obligation to pay rent, if any, on the dwelling shall be an obligation of the decedent’s estate.”
It is undisputed that the property falls within the purview of this section.
Hunley, as the personal representative of Snider’s estate, executed a real-estate contract on or about November 24, 2010, agreeing to sell the property to Norwood, Snider’s brother and Hunley’s uncle. Although Poulin was not a party to the contract, it is undisputed that he signed the second page of the contract in the following manner:
“Approved by:
7s/ Fredrick C. Poulin
“Fred Poulin.”
Poulin claims that he was told by Norwood and Hunley, before and after he signed the contract, that he had to vacate the property. Norwood denied telling Poulin that he had to vacate the property before the execution of the contract.
Hunley, as the personal representative of Snider’s estate, executed a deed dated December 20, 2010, conveying the property to Norwood. Poulin refused to sign the deed and, at least initially, refused to vacate the property. Poulin claims that he received threats to vacate the property “or else.” Poulin did not specify who made any alleged threats. Norwood denied threatening Poulin or knowing of any threats made to him.
Poulin continued to reside on the property after Snider’s death and after the conveyance of the property to Norwood. On February 3, 2011, Norwood sued Pou-lin seeking an order removing Poulin from the property and a judgment for damages against him for wrongful possession of the property. Norwood claimed that Poulin had signed the real-estate contract, indicating that he approved of the sale of the property, and that he had orally agreed to vacate the property before closing the sale of the property. Norwood sought damages of $40 for each day Poulin remained on the property following the sale to Nor-wood. Poulin filed an answer denying the allegations of the complaint and asserting his right to possession of the property pursuant to § 43-8-114. On or about March 11, 2011, however, while Norwood’s suit was pending, Poulin vacated the property and delivered the keys to the house on the' property to Norwood. Several months' later, on August 8, 2011, Poulin filed a counterclaim against Norwood asserting the following claims for damages:
“[Poulin] would show that his possession [of the property] has been interfered with by [Norwood] or persons acting as agent of or on behalf of [Norwood].
[[Image here]]
“[Poulin] would show that [Norwood]’s actions in filing the above lawsuit against [Poulin] herein constitute an abuse of process, malicious prosecution and were designed to harass and force [Poulin] out of property to which he was legally entitled to possession] of. “[Poulin] would show that because of the harassment of [Norwood] and/or persons acting on his behalf, [Poulin] gave up physical possession of the property to which he was legally entitled to possession of and has been caused to suffer damages in that he does not have possession of the real estate he is legally entitled to possession of and has been forced to pay rent when otherwise he *821 could be in possession of the real estate without having an obligation to pay rent.”
The parties participated in a pretrial conference and ultimately agreed to stipulate to all the material facts relevant to the litigation. On August 27, 2012, the trial court entered a judgment adopting the following stipulated facts, among others:
“25. The Real Estate Sales Contract states in part as follows:
“ ‘A Possession is to be given on delivery of deed if property is then vacant; otherwise possession shall be delivered thirty days after closing.’
“26. Thirty days after December 20, 2010 is January 19, 2011.
“27. The number of days between March 11, 2011 when [Norwood] states [Poulin] turned over the keys to the property to [Norwood] and January 19, 2011 is 51 days.
“28. 51 multiplied by the $40.00 per day [Norwood] seeks damages for the wrongfully possession [sic] of the property by [Poulin] amounts to $2,040.00.
“29. The number of days between March 11, 2011, when [Norwood] states [Poulin] turned over the keys to the property to [Norwood] and April 30, 2012, the date this case was called for hearing is 415 days and is the number of days that [Poulin] contends he lost the use and occupancy of the property due to being forced out of the property.
“30. 415 multiplied by the $40.00 per day [Norwood] contends the rental value of the property was worth amounts to $16,600.00 which is the lost value to [Poulin] by being forced out of the property.
“31. [Poulin] pays $350.00 per month rent for his current residence.
“32. The number of months between March 11, 2011, when [Norwood] states [Poulin] turned over the keys to the property to [Norwood] and April 30, 2012, the date this case was called for hearing is 13 1/2 months.
“33. 13 [1/2] months multiplied by $350.00 amounts to $4,725.00 in rent [Poulin] contends that he was required to pay, which he should not have had to pay, because he was forced out of the marital home place.
“34. In addition, [Poulin] contends that he is entitled to compensation for the harassment, abuse of prosecution and malicious prosecution that he has endured due to [Norwood’s] bringing this case against him and the threats against him.
“35. [Norwood] contends, among other things, that [Poulin]’s signing of the Real Estate Sales Contract constitutes a waiver of [Poulin]’s rights under [§] 43-8-114[, Ala.Code 1975],
“36. [Poulin] contends that his agreement to a sale of the property, as reflected in the contract, does not constitute a waiver of his rights under [§] 43-8 — 114[, Ala.Code 1975,] and that he was still entitled to possession of subject property.
“37. The probate estate of Brenda J. Snider, deceased is still pending.
“38. There is presently pending in said probate case, a Petition to Set Aside Family Allowance During Administration and a Petition to Set Aside Homestead Allowance and Exempt Property During Administration which have been filed by [Poulin] and have yet to be ruled upon by the probate court.”
Based on the stipulations, the trial court entered the following judgment finding in favor of Norwood and against Poulin:
“Based upon the pleadings and the ... stipulated facts, it is hereby Ordered, Adjudged and Decreed as follows:
“Judgment in the amount of Two Thousand forty & no/100 Dollars *822 ($2,040.00) is entered in favor of the Plaintiff [Norwood] and against the Defendant [Poulin] for which let execution issue. Costs of this action are hereby taxed against the Defendant [Poulin].”
Poulin filed a timely appeal to this court on October 9, 2012. After reviewing the judgment, we determined that it was not sufficient to support an appeal because it did not expressly adjudicate Poulin’s counterclaim for damages against Norwood. See Sanders v. Campbell) 128 So.3d 531 (Ala.Civ.App.2013) (ordinarily, a final judgment capable of supporting an appeal must adjudicate all pending claims). We reinvested the trial court with jurisdiction to consider whether it wished to address Poulin’s counterclaim. An amended order was entered by the trial court expressly finding in favor of Norwood on Poulin’s counterclaim. Therefore, the judgment is now final for purposes of an appeal. This court has appellate jurisdiction of the case under § 12-3-10, Ala.Code 1975.
The central issue presented for review on appeal is succinctly stated in the stipulations of the parties:
“35. [Norwood] contends, among other things, that [Poulin]’s signing of the Real Estate Sales Contract constitutes a waiver of [Poulin]’s rights under [§] 43-8-114[, Ala.Code 1975].
“36. [Poulin] contends that his agreement to a sale of the property, as reflected in the contract, does not constitute a waiver of his rights under [§] 43-8-114[, Ala.Code 1975,] and that he was still entitled to possession of subject property.”

Standard of Review

The facts were presented to the trial court by stipulation and through documentary evidence. No ore tenus testimony was taken.
“ ‘[Wjhen the trial court hears no oral testimony, and the evidence presented to the trial court consists of stipulations, depositions, and exhibits, the ore tenus rule does not apply.’ Holy Family Catholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App.2002) (citing McGhee v. International Paper Co., 729 So.2d 880 (Ala.Civ.App.1999)). Therefore, no presumption of correctness attaches to the trial court’s judgment, and our review of the trial court’s judgment is de novo. Id.; American Res. Ins. Co. v. H & H Stephens Constr., Inc., 939 So.2d 868, 872-73 (Ala.2006).”
Saad’s Healthcare Sens., Inc. v. Meinhardt, 19 So.3d 847, 852-53 (Ala.Civ.App.2007).

Discussion

Poulin contends that his signature on the real-estate contract purportedly approving of the sale of the property did not constitute a waiver of his right to possession of the property under § 43-8-114, Ala.Code 1975. As noted earlier, that section, which codifies the right of “quarantine,” provides:
“The spouse may retain possession of the dwelling house where the surviving spouse resided with the decedent, with the offices and buildings appurtenant thereto and the plantation connected therewith until homestead is assigned, free from the payment of rent. The obligation to pay rent, if any, on the dwelling shall be an obligation of the decedent’s estate.”
Pursuant to the doctrine of quarantine, the conveyance of a decedent’s homestead by the personal representative of the decedent’s estate does not divest the decedent’s surviving spouse of the right of possession of the homestead. Clancy v. Stephens, 92 Ala. 577, 582, 9 So. 522, 523 (1891); see also Hayden v. Robinson, 472 So.2d 606, 609 (Ala.1985) (holding quarantine right under § 43-8-114 entitled the surviving spouse to retain possession of one of the parcels at issue). Therefore, the convey- *823 anee of the property by Hunley, as the personal representative of Snider’s estate, to Norwood did not affect Poulin’s right to retain possession of the property under § 43-8-114. A surviving spouse may, however, “lose the right to elect or claim [the right] by bar, waiver, or relinquishment.” Garrard v. Lang, 489 So.2d 557, 558 (Ala.1986) (discussing the validity of a purported waiver by a surviving spouse of the right to an elective share); see, e.g., Penney v. Weems, 39 So. 574, 574 (Ala.1905) (not published in Alabama Reports ) (“[A] widow may release her right of quarantine .... ”). The question presented by the facts of this case is whether Poulin’s signature on the real-estate contract, standing alone, constituted a waiver of his right to possession of the property.
“ ‘ “Waiver is defined as the voluntary surrender or relinquishment of some known right, benefit, or advantage. City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 (1967). However, it is well established that a party’s intention to waive a right is to be ascertained from the external acts manifesting the waiver. Givens v. General Motors Acceptance Corp., 56 Ala.App. 561, 324 So.2d 277 (1975). This intention to waive a right may be found where one’s course of conduct indicates the same or is inconsistent with any other intention.” ’ ”
Hughes v. Mitchell Co., 49 So.3d 192, 201-02 (Ala.2010) (quoting Stewart v. Bradley, 15 So.3d 533, 543 (Ala.Civ.App.2008), quoting in turn Waters v. Taylor, 527 So.2d 139,141 (Ala.Civ.App.1988)).
Our review of the real-estate contract signed by Poulin and the stipulated facts reveals no evidence of an intent by Poulin to waive or relinquish his right to possession pursuant to § 43-8-114. There is no evidence of consideration to Poulin to waive any rights, no evidence of any agreement to waive any rights, and no evidence indicating that Poulin was aware of his right to possession of the property under § 43-8-114 at the time he signed the contract. The facts as stipulated by the parties do not show that Poulin was advised of his statutory right to quarantine and the consequences of waiving that right when he signed the real-estate contract. Thus, Poulin’s signature on the real-estate contract, standing alone, did not express a clear intention to waive his right to possess the homestead under § 43-8-114. See, e.g., Garrard v. Lang, 489 So.2d at 559 (indorsing and accepting checks from the estate and executor did not evidence a waiver under § 43-8-72, Ala.Code 1975, when the instruments did not contain language for the release of the widow’s rights); Whitehead v. Boutwell, 218 Ala. 109, 117 So. 623 (1928) (holding that joining a mortgage and releasing homestead and dower rights did not affect a widow’s quarantine right).
On appeal, Norwood cites § 43-8-72, Ala.Code 1975, and a single case, Clancy v. Stephens, 92 Ala. 577, 9 So. 522 (1891), in support of his position that Poulin’s signature constituted a waiver of his quarantine right under § 43-8-114., In Clancy v. Stephens, 92 Ala. at 582, 9 So. at 523, our supreme court held that the right of quarantine was incidental to a surviving spouse’s right to dower. See also Clark v. McWaters, 286 Ala. 563, 564, 243 So.2d 670, 672 (1970)(referring to the right of a widow who has remained in the dwelling house where the husband resided at death as the “ ‘quarantine’ right incidental to dower”). The right to quarantine lasted until dower was assigned. Clancy v. Stephens, 92 Ala. at 579, 9 So. at 522. A valid waiver of the right to quarantine required the same formalities as a waiver of the right to dower. 92 Ala. at 582, 9 So. at 523. The estate of dower has since been abolished. § 43-8-57, Ala.Code.1975. The current statute embodied in § 43-8-114 defines the duration of the quarantine *824 right as lasting until the homestead is assigned; thus, the opinion in Clancy v. Stephens suggests that the quarantine right is now incidental to the homestead right. Accordingly, a valid waiver of a surviving spouse’s right under § 43-8-114 would require at least the same elements as the waiver of the surviving spouse’s right to the homestead allowance.
Section 43-8-72 provides for a waiver of a surviving spouse’s right to a homestead allowance:
“The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or a waiver signed by the party waiving after fair disclosure .... ”
This statute allows for a surviving spouse to unilaterally waive rights by executing a written document after fair disclosure. In Garrard v. Lang, our supreme court considered the validity of a purported waiver under § 43-8-72 through signatures of a surviving spouse indorsing and accepting two checks. The purported waiver was held to be ineffective when the evidence showed that the spouse had not been advised of her rights and of the consequences of waiving those rights and when the indorsed checks did not evidence an agreement to waive the spouse’s statutory allowances. Id. at 561. The instruments did not contain language for a release of the spouse’s rights, and the bare act of indorsing and accepting the checks was held to be insufficient evidence of a waiver. Id.
At a minimum, then, a valid waiver of a surviving spouse’s right to retain possession of the property encompassed in § 43-8-114 must clearly show the intention to release the statutory right with knowledge of that right, which would imply at least that a fair disclosure of the existence of the right occurred.[1] Requiring a clearly expressed intent to release a statutory right after fair disclosure for a valid waiver is consistent with “[t]he public policy of Alabama strongly favor[ing] setting aside the homestead for the surviving spouse.” Goodwin v. Goodwin, 592 So.2d 212, 214 (Ala.1991). “‘[T]he burden of proof in establishing a waiver rests upon the party asserting the claim.’ ” Home v. TGM Assocs., L.P., 56 So.3d 615, 624 (Ala.2010) (quoting Bentley Sys., Inc. v. Intergraph Corp., 922 So.2d 61, 93 (Ala.2005)). In this case, that burden was on Norwood to show that Poulin’s signature constituted a knowing waiver of his right to retain possession of the property. The stipulated facts of this case fail to support that assertion.
Norwood obtained a judgment against Poulin based on the allegation that Poulin wrongfully possessed the property between January 19, 2011, and March 11, 2011. Because Poulin was not a party to the real-estate contract, had not waived or relinquished his right to possession of the property merely by signing the contract, and had the right to possession of the property under § 43-8-114, that portion of the trial court’s judgment in favor of Nor-wood on his claim cannot be sustained and is reversed.
Poulin filed a counterclaim against Norwood for damages resulting from alleged harassment, abuse of process, and malicious prosecution. Poulin chose to present his claims to the trial court *825 through stipulated facts rather than through the presentation of ore tenus testimony. Those stipulated facts contain bare assertions without supporting evidence indicating that Norwood committed any tortious acts. There are no facts in the record establishing any of these claims for relief, nor any evidentiary submission regarding damages to Poulin caused by those acts. Poulin made an unsupported assertion that he was forced to give up possession of the property on March 11, 2011, due to “harassment” by Norwood or unnamed persons acting on Norwood’s behalf. He claimed he was required to pay rent for another residence after leaving the property. But Poulin failed to present any evidence to support these assertions. Therefore, there are no facts in the record to support a judgment in favor of Poulin on his counterclaim. The parties are bound by their stipulation of the evidence on appeal. Accordingly, there is no basis to reverse the judgment finding in favor of Norwood and against Poulin on these theories of liability.
For the foregoing reasons, we affirm the trial court’s judgment in favor of Norwood on Poulin’s counterclaim, we reverse the judgment in favor of Norwood on his claim against Poulin, and we remand the case with instructions to enter a judgment in favor of Poulin on Norwood’s claim.
Norwood’s request for an award of attorney fees on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The commentary to § 43-8-72 suggests that a waiver of statutory rights granted to a surviving spouse requires proof of “adequate consideration or that the agreement was entered into knowingly after full disclosure and knowledge of the value of the estate_” See also Garrard v. Lang, 489 So.2d at 560.